## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| CLARISSA PACELLI, individually and on behalf of all others similarly situated ) ) ) | |
| Plaintiff, ) | CASE NO. <u>3:23-cv-00028</u> |
| ) | |
| v. ) | CLASS ACTION COMPLAINT |
| ) | |
| FREEJUMP DEVELOPPEMENT, d/b/a/ Freejump System, ) ) | **<u>JURY TRIAL DEMANDED</u>** |
| ) | |
| ) | |
| Defendant. | |

### <u>CLASS ACTION COMPLAINT</u>

Plaintiff CLARISSA PACELLI, individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant Freejump Developpement, d/b/a Freejump System, and alleges as follows:

### <u>INTRODUCTION</u>

1.     Plaintiff brings this civil action on behalf of herself and all class members to recover damages suffered as a result of the Freejump Airbag Vest ("Freejump Airbag"), a defective vest for horseback riding that was designed, manufactured, marketed, distributed, and sold by Defendant Freejump System ("Defendant").  The Freejump Airbag is defective and unreasonably dangerous under Virginia law.

2.     The Freejump Airbag is a vest worn by a horseback rider that is tethered to the saddle of the horse. The Freejump Airbag is allegedly designed so that if the rider becomes

1

separated from the saddle, the vest will inflate and provide an added layer of protection upon impact.

3.      The Freejump Airbag is designed to deploy when a lanyard attached to the saddle disengages from the air jacket, activating a $CO_2$ cartridge which subsequently inflates the air jacket.

4.      The Freejump Airbag was marketed and sold by Defendant as a safer and more effective replacement for traditional body protectors. Traditional body protectors are made of high-density foam and are designed to reduce the energy that will impact internal organs during a fall and reduce the chance of sharp projectiles entering the vests.

5.      Defendant marketed the Freejump Airbag as a safer alternative to the traditional body protector without any evidence supporting these safety claims. Indeed, the limited number of studies that have analyzed the injury data for riders wearing air vests concluded that there is no evidence that riders who wear air jackets had reduced injury outcomes in falls. Furthermore, the studies have shown that riders wearing an air jacket were ***more likely*** to suffer a serious or fatal injury compared to riders who only wore a standard body protector.

6.      Defendant aggressively marketed its Freejump Airbag to consumers as safe and effective personal protective equipment despite knowing that its product would fail to perform as marketed and advertised and knowing that the Freejump Airbag was less safe than the alternatives on the market.

7.      Defendant knew that the Freejump Airbag would frequently fail to inflate when the rider would fall or be thrown from the horse.  This defect in the Freejump Airbag would

leave the rider without any body protection resulting in serious injuries to the neck and back of the rider.

## **PARTIES**

8.      Plaintiff Clarissa Pacelli (Plaintiff or "Ms. Pacelli") is and was throughout the events pleaded herein a resident of the Commonwealth of Virginia and domiciled in Charlottesville, Virginia.

9.      On or about September 13, 2020, Ms. Pacelli purchased a Freejump Airbag from TackNRider, an equestrian store and authorized retailer of Freejump products.

10.      Ms. Pacelli decided to purchase the Freejump Airbag because it was marketed as a safer and lightweight alternative to a traditional body protector. Ms. Pacelli researched the options that were available on the TackNRider website. She was directed to Defendant's website and advertising where she read information regarding the benefits and safety of the Freejump Airbag. None of the advertising that Plaintiff saw contained: (1) a disclosure that the Freejump Airbag would not inflate upon a fall from a horse, (2) information that the Freejump Airbag was less effective than traditional body protectors at preventing serious spinal, back, and neck injuries, or (3) a warning that the Freejump Airbag should be worn over a body protector. Had Defendant made these disclosures, Plaintiff would not have purchased the Freejump Airbag or would have paid significantly less for the product.  There is a substantial difference in the market value of what was promised by Defendant and the marked value received by Plaintiff; thus, Plaintiff did not receive the benefit of the bargain.

11.      On May 23, 2021, Plaintiff, an accomplished and experienced horse rider, was competing in a show jumping event in Virginia. Plaintiff wore her Freejump Airbag underneath a

standard competition jacket. Plaintiff had not worn the Freejump Airbag prior to the March 23, 2021, competition.

12.    Prior to riding on the day of the competition, Plaintiff installed the saddle strap on the Freejump Airbag and adjusted the strap in accordance with the manufacturer's instructions. Plaintiff also properly hooked the clip from the "E Lanyard" onto the metal ring of the saddle strip as directed by Defendant.

13.    During the show jumping competition on May 23, 2021, Plaintiff was thrown from her horse while approaching a jump. Plaintiff's Freejump Airbag failed to inflate and she hit the ground, landing on her back with significant force.

14.    Ms. Pacelli was transferred by ambulance to the University of Virginia Medical Center where she was found to have spinal fractures in various locations. Plaintiff underwent immediate surgery requiring an anterior cervical discectomy and fusion (ACDF). She remained hospitalized for four days before being released home.

15.    Ms. Pacelli returned to the hospital on July 6, 2021 for a second surgery to repair a worsening C1 fracture. Due to the severity of her injuries, Ms. Pacelli required extensive physical therapy for her injuries.

16.    Defendant Freejump Developpement, d/b/a Freejump System is a French corporation with its principal place of business at Chateau Perron, 33210 Roaillan, Bordeaux, France. At all times relevant hereto, Defendant designed, manufactured, registered, promoted, marketed, distributed and sold the Freejump Airbag in the United States including to Plaintiff in the Commonwealth of Virginia.

## VENUE AND JURISDICTION

17.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1332(d). Subject matter jurisdiction arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, et seq. This Court also has jurisdiction over the instant matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, et seq., which vest original jurisdiction in the district courts of the United States for any multi-state class action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of Plaintiff is different from that of any defendant. The $5 million amount-in-controversy and diverse citizenship requirements of CAFA are satisfied in this case. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

18.    Defendant designed, manufactured, distributed and sold the Freejump Airbag that forms the basis of this Complaint to Plaintiff.

19.    This Court has personal jurisdiction over Defendant by virtue of its transacting and doing business in the Commonwealth of Virginia and this District and in engaging in statutory violations and common law tortious conduct in Virginia and in this District.

20.    Defendant has purposefully availed itself of the privilege of conducting activities in Virginia, including exploiting the Virginia market for sale of its equestrian products, entered into contracts with Virginia-domiciled corporations, and marketing and selling the Freejump Airbag to Virginia residents.

21.    Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is proper pursuant to 18 U.S.C. § 1965(a) & (b) because Defendant transacts affairs in this District, and he ends of justice require it.

## FACTUAL ALLEGATIONS

22.    According to data from the Federation Equestre Internationale (FEI), injuries in horseback riding competitions varies based upon the nature of the fall but, regardless of how the rider falls, the most serious injuries to the rider tend to be to the head, neck, and spine.

23.    The use of personal protective equipment (PPE) in horseback riding has increased substantially over the past decades. It is now well-established in the medical and scientific literature that the use of helmets has reduced the risk of severe head injury in many fall and accident scenarios.

24.    Body protectors have also been implemented as an important injury prevention measure in horseback riding resulting in many equestrian disciplines mandating their use in events. The U.S. Equestrian Federation and U.S. Eventing Association ("USEF") has required riders to wear traditional body protectors during all events since 1996.

25.    In or about 2010, the first air vest was developed and manufactured for use by horseback riders as an alternative to traditional body protectors. The technology was initially developed for motorcyclists but was adapted for equestrian sports based on the growing market for PPE in the sport.

26.    In May 2019, Defendant acquired Oscar & Gabrielle, a manufacturer of competition jackets that were compatible with another manufacturer's airbag vest. Following the

6

acquisition of Oscar & Gabrielle, Defendant elected to enter the market and develop the

Freejump Airbag for marketing to horseback riders. Prior to this date, Defendant had no

experience with airbag technology, engineering an inflatable airbag vest, or safety testing for

inflatable PPE.

27.     Defendant developed the Freejump Airbag in less than 8 months of research and

development.  Defendant merely adopted the design features from other air vests already on the

market and focused its attention more on the aesthetic look of the vest instead of advancing the

technology or increasing safety features of the product.

28.     Defendant announced the commercial launch of the Freejump Airbag in February

2020.  Prior to launching the Freejump Airbag, Defendant conducted minimal research and

testing to ensure that the Freejump Airbag would properly inflate in reasonably foreseeable falls,

to compare the Freejump Airbag to total body protectors to justify claims of increased safety, and

conduct testing and market research to minimize user error during installation and set-up.

29.     The research and testing that Defendant did conduct prior to introducing the

Freejump Airbag to the market focused on impact absorption characteristics measured by vertical

drop testing.  Defendant knew or should have known that fall scenarios in equestrian sports vary

significantly and are typically far more complex than a standard, vertical fall in an extended

prone or supine position without any horizontal component of velocity. Defendant should have

conducted additional testing to better represent falls from horseback included measures of

longitudinal stiffness and impact absorption characteristics.

30.    On February 12, 2020, Defendant posted to its official website, "After 8 months of R&D in collaboration with Helite, this new Freejump Airbag, is the result of our dedication for innovation, our desire for ever greater performance, comfort and safety for riders."

31.    At the time of its launch, Defendant represented that "each airbag is tested individually" and provides superior performance including inflation speed and level of protection that outperformed "all CRITT certification tests/CE EU certification 2016/425."  Defendant made these representations to suggest to consumers that the Freejump Airbag underwent extensive safety testing prior to being introduced to the market. In reality, Defendant conducted the minimum amount of research and testing that would allow the company to sell the Freejump Airbag as personal protective equipment ("PPE").



32.    Defendant's User Guide represented to purchasers that "In the event of a fall, the key ball separates from the airbag which triggers the system. **The airbag will inflate, and protect the rider according to ALIENOR CERTIFICATION protocol.**"  Nowhere in the User Guide does Defendant warn consumers that the Freejump Airbag may not inflate upon a fall from the horse. At most, the User Guide informs consumers that "If the horse falls and the rider remains in the saddle, the airbag system will not activate." Defendant knew or should have known that the Freejump Airbag would fail to activate even if the rider did not remain in the saddle after the horse falls.

8

33.    Defendant represented in its User Guide that "the FREEJUMP AIRBAG offers a much higher level of protection" and that because of the vest's "perfect fit" it would offer "the best protection."

34.    Defendant misrepresentations regarding the safety of the Freejump Airbag was not limited to its User Guide. In July 21, 2020, Defendant informed consumers via social media and the company's website that the Air Vest provides protection to the cervical, back, lumbar, sacrum, pelvis and thorax. Defendant further noted that the Air Vest provides "neck protection optimized for wearing a certified riding helmet."



35.     In May 2020, Defendant launched a new "North American website" for the purpose of marketing and advertising the Freejump Airbag directly to consumers in North America, including the United States.

36.     In an August 21, 2021 social media post, Defendant noted that the Air Vest offers "incomparable safety."

37.     At all relevant times of its marketing of the Freejump Airbag, Defendant did not have any support for its  claims that the Freejump Airbag offered a "much higher level of protection" and "incomparable safety" compared to other PPE on the market.

38.     A French study published in 2015 investigated the effectiveness of air bag vests on the prevalence of chest and spinal injuries in falls from horseback. The study included 2,079 participants and evaluated sixty-seven falls. The study found that the rate of injury in riders wearing an air bag jacket was higher than for riders who fell without an air bag. The authors concluded that there was no data to confirm the effectiveness of wearing an airbag in the prevention of spinal injuries.  Significantly, the technology and design of the Freejump Airbag was no different than the air bag vests worn by the riders in the study.

39.     As noted by one research scientist and horseback rider:

An issue with air vests from the perspective of safety is they are a FAIL DANGEROUS design. That is, if they don't work they become dangerous, e.g. they may not inflate and keep the rider attached to the horse via the lanyard, thus possibly resulting in the rider being dragged," said Ayers. "I know of four instances where this happened. Standard vests are FAIL SAFE. They work without any external mechanisms.

40.     Even when the vest inflates properly, the Air Vest does not provide any added level of safety to the rider. Military studies examining injuries as the result of being thrown in the air show that the way the spine moves in an impact can be a predictor of injury. Those studies

confirm that there is a higher risk of spine injuries when the body is held rigid at the time of impact. The design of the Air Vest forces the spine into a rigid form, thus increasing the axial forces along the spine.

41.    In 2019, a retrospective data analysis was published in the Journal of Science and Medicine in Sport asking the question "Do riders who wear an air jacket in equestrian eventing have reduced injury risk in falls? The study used FEI data from falls and injuries sustained in sanctioned competitions. The FEI data provided information regarding rider injury severity as confirmed by the event's Chief Medical Officer and the authors requested additional information from the federation regarding the type of injuries sustained. The study found that **"riders wearing an air jacket had 1.7 times increased odds of sustaining a serious or fatal injury in a fall compared to riders who only wore a standard body protector."** The authors concluded that there "was no evidence that air jackets reduce the risk of rider injury in falls.

42.    Jonathan Clissold, the National Safety Officer for British Eventing, also confirmed publicly that the organization keeps records of all instances where the rider fell from the horse and "of the falls that are serious injuries in the UK more [riders] are wearing air jackets than aren't wearing them."

43.    Despite overwhelming data that air bag vests offered less protection than traditional body protectors, Defendant designed the Freejump Airbag to be worn without the added protection of a traditional body protectors. Defendant's User Guide informed purchasers that the Air Vest "has been designed to be close-fitting. It can be worn on its own, or with an outer-layers such as a show jacket, rain jacket, down jacket, sweatshirt or similar."

44.    A key component of Defendant's marketing strategy for the Freejump Airbag was the fact that the vest would be "invisible under the jacket" as it was designed to be "worn alone" or under a show jacket.

45.    In order to offer adequate protection to riders, Defendant should have warned and instructed consumers to wear the Freejump Airbag with a traditional body protector.

46.    In 2012, the USEF allowed riders to wear air vests but only permitted their use if worn in conjunction with a traditional body protector.

47.    Other manufacturers of equestrian PPE did in fact recommend that air vests be used together with a body protector for horseback riding. In August 2019, Roy Burek, the Chairman of Charles Owen, a manufacturer of body protectors stated that:

> The way we look at body protectors and air jackets is it's a bit like a car with seatbelt and airbag"
>
> When we had airbags put in the car, you didn't say, 'Well I'll just leave my seatbelt off.' If the air jacket doesn't go off, if you haven't changed the cylinder, haven't adjusted it correctly, you're in trouble.

48.    On its website, Point Two, a manufacturer of air vests and competitor of Defendant, recommends that for the best protection "an air jacket should be worn over the top of a body protector."  This is because the company's independent testing found that the air bag improved protection to the spine "by 69 percent **when worn over a protective vest**."

49.    One show jump competitor who holds a doctorate in engineering was quoted in a popular equestrian magazine raising skepticism about the benefits of air bag vests. He stated that he was aware of several riders whose vests failed to inflate in falls and added "when you rely on a mechanical design, there's always a possibility that it won't work. That's why you can't rely on

those vests as the sole protective component."

50.    Defendant marketed and advertised their Freejump Airbag to Plaintiff and members of the Class as a safer alternative to other body protectors on the market. Defendant made these safety claims knowing that there was little research done regarding air jackets as they relate to equestrian and horseback riding. Defendant made these claims without adequate information about the failure rate of the Freejump Airbag, the influence of the Freejump Airbag on fall trajectory and direction of impact, the potential destabilization of injuries, the risk of burst fractures, potential differences between inward and outward inflation and other rider-related factors that could affect the effectiveness of the product.

51.    Statements that the Air Vest provides a "much higher level of protection" are obviously false and misleading. At no point did Defendant disclose the fact that the company did not have any credible, scientific basis for claims that the Air Vest provided better protection than the traditional body protector. Nor did Defendant disclose the fact that a defect in the product's design could result in the product failing to inflate prior to impact with the group. No plaintiff or consumer would have purchased the Air Vest if they had known about the material defect and lack of safety data, or would not have paid as much for them. Plaintiff accordingly brings this case on behalf of herself and the Class to seek compensation, costs, and expenses caused by the product's defect.

## TOLLING OF THE STATUTE OF LIMITATIONS

52.    As of the date of this Complaint, Defendant continues to market the Freejump Airbag based on its superior safety, performance and style, despite its knowledge that its Freejump Airbags are defective and unreasonably dangerous. Defendant still has not disclosed

13

and continues to conceal that the Freejump Airbags are defective and unreasonably dangerous.

53.    Plaintiff had no way of knowing about Defendant's wrongful and deceptive conduct with respect to the defective Freejump Airbag. Plaintiff and Class members did not discover and could not reasonably have discovered prior to purchase that their Freejump Airbags are defective and unreasonably dangerous, including that their Onewheel skateFreejump Airbag may fail to inflate upon falling, the Freejump Airbags did not offer increased safety over traditional body protectors, or they overpaid for their Freejump Airbag.

54.    With respect to Freejump Airbags that did fail to inflate or offer protection to the rider upon their fall prior to the filing of this Complaint, Plaintiff and Class members did not discover and could not reasonably have discovered that the condition of their Freejump Airbag was due to a defect known to Defendant.

55.    Within the period of any applicable statutes of limitation or repose, Plaintiff and members of the proposed class could not have discovered through the exercise of reasonable diligence that Defendant was concealing the conduct complained of herein and misrepresenting and concealing the defective nature of the Freejump Airbag.

56.    Plaintiff and Class members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Defendant did not report information within its knowledge to consumers, dealers or relevant authorities; nor would a reasonable and diligent investigation have disclosed that Defendant was aware of the non-conforming and defective nature of the Freejump Airbag.

57.    All applicable statutes of limitation and repose have also been tolled by Defendant's knowing, active, and fraudulent concealment, and denial of the facts alleged herein

14

throughout the time period relevant to this action.

58.     Defendant was under a continuous duty to disclose to Plaintiff and Class members the true character, quality, risk, and nature of the durability and performance of the Freejump Airbag. Instead, Defendant knowingly, affirmatively, and actively concealed or recklessly disregarded the foregoing facts. As a result, Defendant is estopped from relying on any statutes of limitation or repose as a defense in this action.

## CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action on behalf of themselves individually and as a class action, pursuant to Federal Rule of Civil Procedure 23, on behalf of the following classes:

**Nationwide Class**: All persons or entities who purchased a Freejump Airbag.

**Virginia Subclass**: All persons or entities who purchased a Freejump Airbag in the Commonwealth of Virginia.

60.     The Nationwide Class is collectively referred to herein as the "Class." Excluded from the Class are Defendant; the officers, directors and employees of Defendant; any entity in which Defendant have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

61.     Excluded from the Virginia Subclass are Defendant; the officers, directors and employees of Defendant; any entity in which Defendant have a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of Defendant; any judge, justice or judicial officer presiding over this matter and the members of their immediate families and judicial staffs.

62.     Numerosity. The Class and State-specific subclasses members are so numerous

that individual joinder of all of their members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believe that the total number of Class and Virginia subclass members is at least in the thousands, and are numerous and geographically dispersed across the country. While the exact number and identities of the Class and State-specific subclasses members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, as well as by the notice Class members will receive by virtue of this litigation so that they may self-identify. The disposition of the claims of the Class and Virginia subclass members in a single class action will provide substantial benefits to all Parties and the Court. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice. The number of persons for whom this action is filed who are citizens of these United States effectively.

63.    <u>Commonality</u>. Common questions of law and fact exist as to all members of the

Class and Virginia subclass, including, without limitation:

    a.  Whether the Freejump Airbag designed and sold by Defendant possesses a material defect;

    b.  Whether the Freejump Airbag creates an unreasonable risk of harm to users;

    c.  Whether Defendant knew that the Freejump Airbag would fail to inflate depending on the nature of the fall;

    d.  Whether Defendant knew that the Freejump Airbag did not offer any added level of safety when worn on its own;

    e.  Whether Defendant omitted material facts about the quality, usability, and safety of the Freejump Airbags;

16

    f.   Whether Defendant knew or should have known that the Freejump Airbag was defective at the time of sale;

    g.   Whether Defendant fraudulently concealed the defect of the Freejump Airbag;

    h.   Whether Defendant breached express warranties relating to the Freejump Airbag;

    i.   Whether Defendant breached implied warranties of merchantability relating to the Freejump Airbag;

    j.   Whether the product's defects resulted from Defendant' negligence;

    k.   Whether Defendant are strictly liable for selling the Freejump Airbag;

    l.   Whether Plaintiff and Class members overpaid for their Freejump Airbags at the point of sale;

    m.   Whether Plaintiff and Class and Virginia subclass members are entitled to damages; and

    n.   Whether Plaintiff and Class and the Subclasses members are entitled to equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

64.    <u>Typicality</u>. Plainiff's claims are typical of the Class and Virginia subclass members' claims because all have been comparably injured through Defendant's wrongful conduct as described above.

65.    <u>Adequacy of Representation.</u> Plaintiff is committed to pursuing this action and have retained competent counsel experienced in consumer and product liability class action litigation. Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class and Virginia subclass members.

66.    <u>Superiority of Class Action Under Rule 23(b)(3)</u>: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual

difficulties are likely to be encountered in the management of this class action. The financial

detriment suffered by Plaintiff and the other members of the Class and States-specific subclass

are relatively small compared to the burden and expense that would be required to individually

litigate their claims against Defendant. Accordingly, it would be impracticable for the members

of the Class and Subclass to individually seek redress for Defendant's wrongful conduct. Even if

members of the Class and State-specific subclasses could afford individual litigation, the court

system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments and increases the delay and expense to all parties and the court system. By contrast,

the class action device presents far fewer management difficulties and provides the benefits of

single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 15 U.S.C. § 2301, Et. Seq.
### THE MAGNUSON-MOSS WARRANTY ACT
**(On Behalf of Plaintiff and the Class)**

67.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set

forth herein.

68.     Plaintiff and Class Members are "consumers" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

69.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-

Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

70.     The Freejump Airbags are "consumer products" within the meaning of the

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

71.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

72.    Defendant's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Freejump Airbags' implied warranties are covered under 15 U.S.C. § 2301(7).

73.    Defendant breached these warranties, as described in more detail above. Without limitation, the Freejump Airbags contain a common defect in that the Freejump Airbag fail to operate as represented by Defendant.

74.    Plaintiff and the other Class members have had sufficient direct dealings with Defendant through their purchase of the Freejump Airbag to establish privity of contract between Defendant on one hand, and Plaintiff and each of the other Class members on the other hand

75.    Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

76.    At the time of sale of each Freejump Airbags, Defendant knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Freejump Airbag's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Freejump Airbag a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

77.    Plaintiff and the other Class members would suffer economic hardship if they returned their Freejump Airbag but did not receive the return of all payments made by them.

Because FM is refusing to acknowledge any revocation of acceptance and return immediately

any payments made, Plaintiff and the other Class members have not re-accepted their Freejump

Airbags by retaining them.

78.    The amount in controversy of Plaintiff' individual claims meets or exceeds the

sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of

interest and costs, computed on the basis of all claims to be determined in this lawsuit.

79.    Plaintiff, individually and on behalf of the other Class members, seek all damages

permitted by law, including diminution in value of the Freejump Airbag, in an amount to be

proven at trial.

**COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On behalf of Plaintiff and the Class)**

80.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set

forth herein.

81.    The Freejump Airbag purchased by Plaintiff and Class members was defectively

designed and manufactured and posed a serious and immediate safety risk to consumers and the

public.

82.    All of the Freejump Airbags sold by Defendant left Defendant's facilities and

control with a defect caused by a defective design incorporated into the manufacture of the

Freejump Airbags.

83.    The defects placed and/or places Plaintiff and Class members at a serious safety

and personal injury risk upon using the Freejump Airbag while riding horseback.

84.    The law imposes a duty requiring manufacturers or sellers of a product to ensure

that the product is merchantable and reasonably fit for the ordinary purposes for which such a

product is used, and that the product is acceptable in trade for the product description. This implied

warranty of merchantability is part of the basis of the bargain between Defendant and consumers,

including Plaintiff and the Class members.

85.     Notwithstanding the aforementioned duty, at the time of delivery, Defendant

breached the implied warranty of merchantability in that the Freejump Airbag is defective and

poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not

pass without objection, and failed to conform to the standard performance of like products.

86.     Defendant knew, or should have known, that the Freejump Airbag posed a safety

risk and was defective, and that it breached the implied warranties at the time they sold the

Freejump Airbag to Plaintiff and Class members or otherwise placed them into the stream of

commerce and were acquired by Plaintiff and the Class members.

87.     Plaintiff and lass members have privity of contract with Defendant through their

purchase of the Freejump Airbag from Defendant, and through the express written and implied

warranties Defendant issued to its customers. Defendant's warranties accompanied the Freejump

Airbag and were intended to benefit the ultimate consumers.

88.     As a direct and proximate result of Defendant' breach of the implied warranties,

Plaintiff and Class members purchased or acquired unsafe Freejump Airbags that were not fit to

be used for their intended purpose of offering body protection if there was a fall from a horse.

89.     Plaintiff notified Defendant of their breach of the implied warranties shortly after

their Freejump Airbag failed to perform as warranted as a result of the product's defects.

90.     Despite having notice and knowledge of the Defect, Defendant failed to provide

defect-free Freejump Airbags to Plaintiff and Class members, and failed to provide any form of compensation for the damages resulting from the defect in the product.

91.    As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and Class members have suffered damages and injuries.

92.    Plaintiff, on behalf of herself and all others similarly situated, demand judgment against Defendant for compensatory damages, establishment of a common fund, plus attorneys' fees, costs and interest.

**COUNT III**
**BREACH OF CONTRACT**
**(COMMON LAW)**
**(On Behalf of Plaintiff and the Class)**

93.    Plaintiff incorporate by reference all allegations as though fully set forth herein.

94.    Plaintiff assert this Count on behalf of herself and the Nationwide Class or, in the alternative, on behalf of the State-specific class.

95.    Defendant's misrepresentations and omissions alleged herein, including, but not limited to, Defendant's concealment and suppression of material facts concerning the safety, reliability, and quality of the Freejump Airbags, caused Plaintiff and the other Class members to make their purchases or leases of their Freejump Airbags.

96.    Absent those misrepresentations and omissions, Plaintiff and the other Class and Subclass members would not have purchased the Freejump Airbags, would not have purchased these Freejump Airbags at the prices they paid, and/or would have purchased or leased a different body protectors that offered superior protection and did not have the same defect. Accordingly, Plaintiff and the other Class and Subclass members overpaid for their Freejump Airbags and did

not receive the benefit of their bargain.

97.     Each and every sale of a Freejump Airbag constitutes a contract between Defendant and the purchaser. Defendant breached these contracts by selling or leasing to Plaintiff and the other Class and Subclass members defective Freejump Airbags and by misrepresenting or failing to disclose material facts concerning the safety, reliability, and quality of the Freejump Airbags, and by affirmatively making misleading statements concerning the safety, reliability, and quality of the Freejump Airbags.

98.     As a direct and proximate result of Defendant's breach of contract, Plaintiff and the Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

<u>COUNT IV</u>
**VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VCPA)**
**(On Behalf of Plaintiff and the Virginia Subclass)**

99.     Plaintiff incorporate by reference all allegations as though fully set forth herein.

100.    Defendant is now, and was at all relevant times mentioned herein, a "supplier" of "goods" or "services" in connection with "consumer transactions" as those terms are defined in § 59.1-198 of the VCPA.

101.    By offering for sale the Freejump Airbags to consumers, Defendant has and does engage in "consumer transactions" as defined in § 59.1-198 of the VCPA.

102.    In violation of the VCPA, Defendant employed deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in

their distribution, sale, marketing, and/or advertisement of the Freejump Airbags, including information in its User Guide and on Defendant's website.

103.    In the course of Defendant's business, it willfully failed to disclose and actively concealed that the Freejump Airbag does not always discharge and inflate upon the rider being separated from the horse, causing the rider to hit the ground with no body protection at all. Defendant further failed to disclose and actively concealed the fact that the Freejump Airbag did not offer a superior safety benefit than traditional body protectors. Particularly in light of Defendant's advertising and marketing campaign, a reasonable American consumer would expect the Freejump Airbag to offer superior safety and be without defect. Accordingly, Defendant engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Freejump Airbag.

104.    Defendant's fraudulent and unlawful actions and omissions included the following under § 59.1-200 of the VCPA:

    a.  Misrepresenting that the Freejump Airbag had certain characteristics and benefits; and

    b.  Using deception, fraud, false promise, and misrepresentation in connection with the sale of the Freejump Airbag;

105.    In purchasing the Freejump Airbags, Plaintiff and Class Members were deceived by Defendant's failure to disclose the defects in the product and the danger it posed to horseback riders.

106.     Plaintiff and the Class Members reasonably relied upon Defendant's misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

107.     Defendant's conduct proximately caused injuries to Plaintiff and Virginia subclass members.

108.     Plaintiff and Virginia Subclass members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct in that Plaintiff and California Subclass members overpaid for the Freejump Airbag and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

109.     Plaintiff and Virginia Subclass members seek damages pursuant to § 59.1-204 of the VCPA and other damages allowed by law.

## COUNT V
### NEGLIGENCE
**(On behalf of Plaintiff and the Virginia Subclass)**

110.     Plaintiff incorporates by reference all allegations as though fully set forth herein.

111.     Defendant owed a duty to Plaintiff to design, manufacture, produce, test, inspect, market, distribute, and sell the Freejump Airbag with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiff from foreseeable and unreasonable risks of harm. Defendant breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Freejump Airbag.

112.     Defendant also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a

proximate cause of the harm for which damages are sought.

113.    In addition, at the time the Freejump Airbags left Defendant's control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Defendant knew, or in the existence of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer. Defendant knew or should have known that the Freejump Airbag they designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

114.    At the time of the design or manufacture of the Freejump Airbag, Defendant acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

115.    Further, at the time the Freejump Airbags left the control of Defendant, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Freejump Airbag. At the time the Freejump Airbags left the control of Defendant, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

116.    Defendant knew or should have known that the Freejump Airbag created an unreasonable safety risk as a result of the defects in the product, and that the defects could cause personal injury.

117.    Based on their knowledge, Defendant had a duty to disclose to Plaintiff the serious

26

safety risks posed by the Freejump Airbag, in addition to a duty to disclose the nature of the product's defects.

118.    Defendant had a further duty not to put the defective products on the market, had a continuing duty to remove their unsafe Freejump Airbag from the market, and also had a duty to seek a recall from consumers, including Plaintiff

119.    Defendant failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Freejump Airbag by, among other things, failing to design and manufacture the Freejump Airbag in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the product's defects did not occur.

120.    Defendant failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the defects.

121.    Defendant failed to exercise reasonable care when they knew of the safety risks the Defects posed and actively concealed those risks from Plaintiff.

122.    Defendant failed to exercise reasonable care when it knew of the safety risks posed by the defects and failed to replace, repair, or recall Freejump Airbags they knew or should have known were unsafe and defective.

123.    As a direct and proximate result of Defendant's negligence, Plaintiff bought or acquired the Freejump Airbag without knowledge of the product's defects or of the serious safety risk, and purchased or acquired an unsafe product that could not be used for its intended purpose.

124.    As a direct and proximate result of Defendant's negligence, Plaintiff suffered personal injuries as a direct and proximate result of the Defects while using their Freejump Airbag

in the manner and for the purpose for which it was designed, manufactured and marketed.

Plaintiff seeks damages for their personal injury as a separate non-class claim.

## COUNT VI
## STRICT LIABILITY DESIGN DEFECT AND FAILURE TO WARN
### (On Behalf of Plaintiff and the Virginia Subclass)

125.    Plaintiff incorporates by reference all allegations as though fully set forth herein.

126.    Defendant designed, developed, tested, manufactured, distributed, marketed, and/or sold the Freejump Airbag to Plaintiff and the Virginia subclass.

127.    The Freejump Airbags were defective in their manufacture and design, and contained a material defect when they left Defendant' control.

128.    Defendant could have implemented or adopted reasonable and feasible alternative designs, materials, and/or manufacturing methods to remedy the material defects in the Freejump Airbag but failed to do so.

129.    The risk of harm associated with the Freejump Airbag outweighs its intended and foreseeable benefit.

130.    Defendant' Freejump Airbag reached Plaintiff and Class members in the same condition as when it left Defendant' control.

131.    Defendant knew or should have known that the Freejump Airbags were defective and posed a real risk of failing to inflate or increasing the severity of injuries caused from falls.

132.    The Freejump Airbag was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

133.    Plaintiff and the Virginia subclass members were unaware of the risk of harm posed by the Freejump Airbag.

134. Defendant failed to inform Plaintiff and Virginia subclass members as to the Freejump Airbag's defects resulting in significant personal injury.

135. Defendant failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Freejump Airbag could fail to inflate upon a fall thus leaving the rider without any protection.

136. Defendant failed to provide a warning that a reasonable manufacturer would have provided that the Freejump Airbag should have been worn with a traditional body protector to provide adequate safety.

137. The Freejump Airbag was defective due to inadequate warnings, inadequate inspection and testing, and/or inadequate reporting concerning the results of quality control testing, or lack thereof.

138. Had Plaintiff and the Virginia Subclass members been adequately warned concerning the defects in the Freejump Airbag and the lack of any safety data, they would have taken steps to avoid damages by not purchasing or acquiring them, or could have taken further precautions in using them, including wearing additional body protection.

139. Upon learning that their Freejump Airbag failed to offer adequate protection and that it could fail to inflate as designed to do, Defendant had a duty to warn consumers of the possibility that the defect could cause severe injury to persons, even when used for their intended purpose.

140. Defendant, instead, falsely represented that the Freejump Airbag contained safety features to prevent injuries from falls.

141. As a direct and proximate result of the defective condition of the Freejump

29

Airbag, Plaintiff and the Virginia subclass members have incurred or are at risk of incurring

damages to their persons and to their personal and/or real property in an amount to be determined

at trial.

142.    Plaintiff likewise suffered personal injuries as a direct and proximate result of the

defects while using their Freejump Airbag in the manner and for the purpose for which it was

designed, manufactured and marketed. Plaintiff seeks damages for her personal injury as a

separate non-class claim.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all members of the Class,

respectfully request that the Court enter judgment in their favor against Defendant as follows:

A.    An Order certifying this action as a class action on behalf of the Nationwide Class
and the Virginia Subclass;

B.    An Order appointing Plaintiff as the Class Representative, and appointing the
undersigned counsel as Class Counsel;

C.    Payment to Plaintiff and Class members of all damages associated with or caused
by the defective Freejump Airbags, in an amount to be proven at trial;

D.    Costs, restitution, damages, including punitive damages, exemplary damages,
treble damages, and disgorgement in an amount to be proven at trial;

E.    An award of attorneys' fees and costs, as provided by law and/or as would be
reasonable from any recovery of monies recovered for or benefits bestowed on the
Class;

F.      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute;

G.      Such other or further relief as may be appropriate.


Dated: May 23, 2023

Respectfully submitted,

THE MILLER FIRM, LLC

/s/ Jeffrey Travers
Jeffrey A. Travers, Esq.
Virginia Bar No. 77409
David J. Dickens, Esq.
Virginia Bar No. 72891
108 Railroad Avenue
Orange, Virginia 22960
Tel: (540) 672-4224
Fax: (540) 672-3055
Email: jtravers@millerfirmllc.com

*Counsel for Plaintiff and the Proposed Class*