Case 3:23-cv-00028-JHY-JCH   Document 73   Filed 07/02/25   Page 1 of 15
Pageid#: 452

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
July 02, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| Clarissa Pacelli, | ) | |
|       Plaintiff, | ) | |
| v. | ) | Civil Action No. 3:23-cv-00028 |
| FreeJumpSystem, | ) | |
|       Defendant. | ) | |
| FreeJumpSystem, | ) | |
|       Third-Party Plaintiff, | ) | |
| v. | ) | |
| Helite SAS, | ) | |
|       Third-Party Defendant. | ) | |

## **MEMORANDUM OPINION**

This matter is before the court on Third-Party Defendant Helite SAS's ("Helite") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Dkt. 51 [hereinafter "Mot. to Dismiss"].) For the reasons outlined below, the court will grant Helite's motion to dismiss.

### I.    Background

#### A.  Factual History

The following facts are taken from Plaintiff Clarissa Pacelli's Amended Complaint and Defendant/Third-Party Plaintiff FREEJUMPSYSTEM's ("FreeJump") Third-Party

Complaint, and the court presumes them to be true. *See Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019) (construing the complaint and affidavits submitted by plaintiff to be true when resolving a Rule 12(b)(2) motion to dismiss when they were not controverted by evidence from the other party). Pacelli is a resident of the Commonwealth of Virginia, domiciled in Charlottesville, Virginia. (First Am. Compl. ¶ 8 (Dkt. 16).) Pacelli purchased a FreeJump-branded airbag vest from a local equestrian store, and authorized retailer of FreeJump products, called TackNRider on or about September 13, 2020. (*Id.* ¶ 9.) On May 23, 2021, the FreeJump-branded airbag vest failed to inflate after Pacelli was thrown from her horse. (Third-Party Compl. ¶¶ 11–12 (Dkt. 22).) Pacelli subsequently underwent two surgeries and endured extensive physical therapy. (*Id.* ¶ 13.)

FreeJump is a French corporation with a principal place of business in Bordeaux, France. (*Id.* ¶ 2.) FreeJump marketed FreeJump-branded airbag vests to individuals, such as Pacelli, as a "safer and more effective replacement" for other body protectors. (First Am. Compl. ¶ 4.)

Helite is a French corporation with its headquarters and principal place of business in Fontaine Lés Dijon, France. (Third-Party Compl. ¶ 3.) Helite is a private limited liability company. (Decl. of Gérard Thevenot ¶ 4 (Dkt. 52-1).)[1] It is not registered to do business in Virginia, it does not have an office in Virginia, it does not have agents or employees in Virginia, and it does not own or lease any property in Virginia. (*Id.* ¶ 5.)

---

[1] The court "must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 936 F.3d at 226. At the same time, however, the court need not "credit conclusory allegations or draw farfetched inferences." *Maselli & Lane, PC v. Miller & Schub, PA*, 215 F.3d 1320 (Table), 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (quoting *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994)).

- 2 -

Back in April 2019, FreeJump and Helite negotiated a commercial agreement regarding manufacture of equipment for horses and riders. (*Id.* ¶¶ 6–7.) The parties entered into a non-disclosure agreement related to this commercial transaction and included a forum selection clause in their agreement, designating Bordeaux's commercial court in France as the venue of choice in the event of any disputes. (*Id.* ¶ 7.) As part of this agreement, Helite agreed to share its airbag technology with FreeJump by manufacturing vests. (*Id.* ¶ 8.) The vests were manufactured by Helite in France. (*Id.* ¶ 14.) FreeJump then branded and marketed the vests as FreeJump airbag vests. (*Id.* ¶ 8.) Helite alleged FreeJump ordered roughly 1,500 vests in total during the two companies' relationship. (*Id.* ¶ 11.)

It is likely, but not certain, that Helite engineered and/or manufactured the FreeJump airbag vest that Pacelli purchased. That is because FreeJump eventually began manufacturing a competing airbag vest product, resulting in the deterioration of FreeJump and Helite's relationship by May of 2021. (*Id.* ¶ 12.) However, because Pacelli purchased the vest on or around September 13, 2020, before the relationship had deteriorated, it appears likely that the product that injured Pacelli was originally manufactured by Helite. (First Am. Compl. ¶ 9.) Indeed, the third-party complaint indicates that Helite engineered and/or manufactured the vest in question. (Third-Party Compl. ¶ 10.) Still, manager of Helite, Gérard Thevenot's understanding is that FreeJump began manufacturing its own airbag vest before the end of the two companies' relationship, suggesting it could have been possible for FreeJump to independently manufacture the vest Pacelli purchased. (Decl. of Gérard Thevenot ¶ 12.) Resolving inferences in FreeJump's favor, the court considers the FreeJump-branded vest to have been originally manufactured by Helite in France for the purposes of this motion.

At the time Pacelli purchased the vest, Helite had two independent distributors in the United States for its branded products: (1) Hansen Distribution in Wellington, Florida and (2) MaxMOTO in Reno, Nevada. (Decl. of Gérard Thevenot ¶ 16.) MaxMOTO did not sell any equestrian products. (*Id.*) Hansen Distribution sold equestrian products to only one Helite dealer in Virginia, a dealer in Warrenton. (*Id.* ¶¶ 16, 18.) This dealer did not sell any FreeJump-branded airbag vests. (*Id.* ¶ 18.) Helite also has a nationwide website that lists Helite's product dealers. (Third-Party Compl. ¶ 7.)

## B. Procedural History

On May 23, 2023, Pacelli brought a class action complaint against FreeJump Developpement, in the U.S. District Court for the Western District of Virginia, Charlottesville Division. (*See* Compl. (Dkt. 1).) Pacelli filed an amended complaint on March 26, 2024, substituting FreeJump for FreeJump Developpement. (*See* First Am. Compl. ¶ 16.) Pacelli brought her lawsuit "individually and as a class action . . . on behalf" of two classes, a "Nationwide Class" and a "Virginia Subclass." (*Id.* ¶ 59.) The "Nationwide Class" is defined as "[a]ll persons or entities who purchased a Freejump Airbag" while the "Virginia Subclass" is defined as "[a]ll persons or entities who purchased a Freejump Airbag in the Commonwealth of Virginia. (*Id.*)

The amended complaint includes six counts. Count I alleges that FreeJump infringed upon a written or implied warranty, in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et. seq.* (*Id.* ¶¶ 67–79.) Count II alleges that FreeJump breached an implied warranty of merchantability. (*Id.* ¶¶ 80–92.) Count III alleges that FreeJump breached contracts "by selling or leasing . . . defective Freejump Airbags and by misrepresenting or

failing to disclose material facts . . . ." (*Id.* ¶¶ 93–98.) Count IV alleges that FreeJump "employed deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts" in distributing, selling, and advertising their products in violation of Virginia consumer protection law. (*Id.* ¶¶ 99–109.) Count V alleges that FreeJump was negligent, failing to exercise reasonable care with respect to the FreeJump airbags. (*Id.* ¶¶ 110–124.) Count VI alleges that FreeJump failed to warn their consumers that the airbags were defective and, thus, subject to strict liability. (*Id.* ¶¶ 125–42.)

FreeJump filed a third-party complaint against Helite on May 29, 2024. (*See* Third-Party Compl.) This complaint has two counts. Count I alleges a common law contribution claim, in which "Freejump will be entitled to judgment against Helite for contribution resulting from Helite's liability in whole or in apportionment." (*Id.* ¶¶ 15–17.) Count II alleges a common law indemnification claim, such that in the event of liability, "the sole or primary liability would be that of Helite." (*Id.* ¶¶ 18–20.)

After Helite failed to appear, answer, or otherwise defend the third-party complaint, the clerk entered default. (Clerk's Entry of Default at 1 (Dkt. 37).) One month later, Helite filed a motion to set aside the default. (Mot. to Set Aside Default (Dkt. 38).) The court granted the motion. (Order to Set Aside (Dkt. 50).)

On May 5, 2025, Helite filed a motion to dismiss and supporting memorandum for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Mot. to Dismiss & Third-Party Def. Helite's Mem. of Law in Supp. of its Mot. to Dismiss Defendant/Third-Party Pl. FreeJump's Third-Party Compl. for Lack of Personal Jurisdiction [hereinafter Def.'s Mem. in Supp.] (Dkts. 51, 52).) The memorandum argues that the court lacks personal

jurisdiction in the form of general or specific jurisdiction over Helite. Helite claims that it "exercised no role over FreeJump's distribution channels, had no control or involvement with FreeJump's product sales, and . . . did not target the Virginia market (or any U.S. market) in connection with FreeJump's vest." (Def.'s Mem. in Supp. at 2).) Attached to its supporting memorandum, Helite submitted an affidavit from Manager Gérard Thevenot and the non-disclosure agreement between the parties. (*See* Decl. of Gérard Thevenot ; Ex. A (Dkt. 52-2).)

FreeJump opposes the motion, arguing that its third-party complaint alleges facts sufficient for the court to exercise specific jurisdiction over Helite and, at a minimum, requests limited jurisdictional discovery. (Third-Party Pl.'s Opp'n Third-Party Def.'s Rule 12(b)(2) Mot. to Dismiss at 2 (Dkt. 55) [hereinafter "Pl.'s Opp'n"].) FreeJump claims that Helite provided and advertised equestrian equipment, including Helite's branded version of the airbag vest to a dealer in Warrenton, Virginia and through a nationwide website. (*Id.* at 4.) While FreeJump did not submit its own affidavit or declaration in response, it did attach six exhibits to its opposition memorandum. (*See* Ex. A (Dkt. 55-1), Ex. B (Dkt. 55-2), Ex. C (Dkt. 55-3), Ex. D (Dkt. 55-4), Ex. E (Dkt. 55-5), Ex. F (Dkt. 55-6).)

Replying to FreeJump's opposition, Helite claims that FreeJump does not "show that Helite or Hansen [Distribution] ever sold or had any control over the sale of the FreeJump-branded airbag vest in Virginia." (Reply in Supp. of Mot. to Dismiss at 4 (Dkt. 59) [hereinafter "Def.'s Reply"].)

The court held a hearing on the motion on June 25, 2025.

## II. Standard of Review

Rule 12(b)(2) provides that a defendant may file a motion to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Whether personal jurisdiction may be exercised is a question "for the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993).

When a district court decides a pretrial Rule 12(b)(2) motion without conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (emphasis added); *see Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). While an evidentiary hearing does not necessarily require live testimony, it may involve discovery: exhibits, deposition transcripts, affidavits, interrogatory answers, and documentary evidence, among other things. *Grayson v. Anderson*, 816 F.3d 262, 266 (4th Cir. 2016). In this case, the court need only explore if FreeJump has made a *prima facie* showing of personal jurisdiction.

In deciding whether the plaintiff has made a *prima facie* showing, the court takes "all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc.*, 334 F.3d at 396. When assessing whether a *prima facie* case has been made, the court must determine "whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins*, 935 F.3d at 226. In so doing, "the court may also consider affidavits submitted by both parties," as well as exhibits. *Id.*; *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020).

### III.    Analysis

Federal courts first look to state law in determining if personal jurisdiction exists over a defendant. Federal Rule of Civil Procedure 4(k)(1)(A) provides that the service of "a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Virginia's "long-arm" statute details the situations under which a court in the Commonwealth may properly exercise general jurisdiction over a nonresident. Va. Code Ann. § 8.01-328.1. In addition to asking if exercising jurisdiction is authorized by the relevant state long-arm statute, courts must also ask if the "application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). However, in Virginia, the Commonwealth's "long-arm statute extends personal jurisdiction over nonresident defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause." *UMG Recordings*, 963 F.3d at 350–51. As a result, the statutory and constitutional questions collapse into a single inquiry: "whether the defendant has sufficient 'minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and citation omitted).

In determining whether the court can exercise personal jurisdiction, courts primarily focus on "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). That focus has led to the recognition of "two

kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S 915, 919 (2011)). As the name suggests, general jurisdiction permits courts to exercise personal jurisdiction over the defendant for "any and all claims" brought against him, whether or not they "relate to the forum State or the defendant's activity there." *Id.* By contrast, specific jurisdiction exists when the defendant takes some action to "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Specific jurisdiction is much narrower than general jurisdiction, and only exists over certain claims that "aris[e] out of or relat[e] to the defendant's contacts" with the State. *Bristol-Myers Squibb*, 582 U.S. at 262.

### A. General Jurisdiction

Helite argues that the court cannot exercise general jurisdiction in this case because "[n]o exceptional circumstances exist that would render Helite," a French company headquartered in Fontaine Lès Dijon, France, "at home" in Virginia. (Def.'s Mem. in Supp. at 2.) In its response in opposition, FreeJump offers no argument suggesting that the court can exercise general jurisdiction over Helite. (*See* Pl.'s Opp'n.) As a result, the court finds it has no basis in the third-amended complaint to exercise general jurisdiction over Helite, and that FreeJump has not made a *prima facie* showing of general jurisdiction.

## B. Specific Jurisdiction

Helite next argues that the court cannot exercise specific jurisdiction in this case. (Def.'s Mem. in Supp. at 2.) Helite asserts that "manufacturing work in France, for another French company, does not establish the minimum contacts necessary to hale Helite into court" in the Commonwealth. (*Id.*) By contrast, FreeJump argues Helite purposely availed itself of the Virginia market through one of its dealers, a nationwide website, as well as advertising in Virginia and thus its availment is sufficiently related to the claims at issue. (Pl.'s Opp'n at 8–10.)

In analyzing specific jurisdiction, the court will consider allegations in the complaint, the third-party complaint, and the motion papers and attachments. *Hawkins*, 935 F.3d at 226; *UMG Recordings*, 963 F.3d at 350. Parties in this litigation must "have certain minimum contacts" so that "the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 456, 463 (1941)).

In determining specific jurisdiction, the Fourth Circuit instructs the court to assess "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claim arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *ALS Scan, Inc. v. Digit. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "The first two factors correspond with the 'minimum contacts' prong of *International Shoe*, and the third factor corresponds with the 'fair play and substantial justice' prong." *Mya Saray, LLC v. Dabes*, No. 3:17-cv-00016, 2018 WL 1161145, at *3 (W.D. Va. Mar. 5, 2018) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)) (internal quotation omitted).

1. Purposeful Availment

The first factor outlines the "minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs Corp.*, 561 F.3d at 278. Courts normally utilize "various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Id.* In the business context, these factors include, but are not limited to:

- whether the defendant maintains offices or agents in the forums state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Id.* (citations omitted).

The court finds that the vast majority of the applicable factors to be considered under the first prong do not exist. Helite is not registered to do business in Virginia, has no office in Virginia, has no agents or employees in Virginia, and does not own nor lease any property in Virginia. (Decl. of Gérard Thevenot ¶ 5.) Helite's headquarters and principal place of business are in Fontaine Lès Dijon, France. (*Id.* ¶ 4.) And its dealings with FreeJump can best be characterized as *French*: its contract is governed by French law, contains a French forum selection clause, and is written in French. (*Id.* ¶ 7.)

FreeJump resists and contends that because Helite has "directly sold products to authorized dealers within Virginia, undoubtedly sold to customers in Virginia directly via its website, and advertised in Virginia, [it] has established the minimum contacts to demonstrate that it has purposefully availed itself of the Virginia forum."  (Pl.'s Opp'n at 8–10 (internal citations omitted).)  At most, however, FreeJump has only suggested that two of the eight factors *might* exist: reaching into Virginia to solicit or initiate business and engaging in significant or long-term business activities.  *See Grizzard v. LG Chem Ltd.*, 641 F. Supp. 3d 282, 290 (E.D. Va. 2022).

FreeJump primarily submits three arguments.  First, FreeJump highlights Helite's Florida-based distributor, Hansen.  True, Hansen Distribution sells Helite-branded equestrian equipment to one dealer in Warrenton, Virginia (including Helite-branded airbag safety vests).  But despite Hansen Distribution's apparent connection to Helite through Ingrid Hansen (*see* Ex. B (Dkt. 55-2), Ex. C (Dkt. 55-3), and Ex. D (Dkt. 55-4)), Helite claims to exercise no control over Hansen's sales, advertising, retail, or customer targeting.  (Decl. of Gérard Thevenot ¶ 16.)  FreeJump also points to Helite's website, which it claims has almost certainly made sales in Virginia.  While Helite does possess a nationwide website which lists product dealers throughout the nation including Virginia, it does not contain any information that is only for consumers in the Virginia market or residents of the Commonwealth.  (Third-Party Compl. ¶ 7.)  Finally, FreeJump directs the court's focus to Helite's sponsorship of an equestrian organization headquartered in Virginia.  However, a single "isolated" contact, particularly in advertising, may not be enough to show that Helite purposefully availed itself of the market in the Commonwealth and established minimum contacts as a result.  *Cf. Ford*

*Motor*, 595 U.S. at 371 (finding purposeful availment after Ford had marketed their cars in the forum states "[b]y every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail").

At bottom, most of the non-exclusive factors point to the conclusion that Helite has *not* purposefully availed itself of the Virginia market. For the two factors that *might* exist, Helite's connection to the Commonwealth appears limited. However, even assuming, without deciding, that Helite has indeed purposefully availed itself of Virginia due to its limited contacts, the court finds that the claims do not arise out of activities in the forum dispositive.

2. Claims Arising Out of Activities in the Forum

The second factor considers whether the suit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 582 U.S. at 262 (internal quotation marks and emphasis omitted); *see ALS Scan*, 293 F.3d at 712. In other words, FreeJump must show that its claims for common law contribution and indemnification arise out of or relate to Helite's conduct directed at Virginia. *See Ford Motor*, 592 U.S. at 359–60 ("Or put just a bit differently, 'there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'") (quoting *Bristol-Myers Squibb*, 582 U.S. at 262). While "a strict causal relationship between [Helite's] in-state activity and the litigation" is not required, *id.* at 362, "[t]he Supreme Court has made clear that the exercise of specific jurisdiction in a products liability case requires a stronger connection than simply doing business in a state." *Wallace v. Yamaha Motors Corp, U.S.A.*, No. 19-2459, 2022 WL 61430, at *4 (4th Cir. Jan. 6, 2022).

Through FreeJump's common law contribution and indemnification claims, it seeks to recoup damages sustained only by "Pacelli or [the] putative class members." (Third-Party Compl. ¶¶ 17, 20.) Thus, FreeJump's claims to a judgment necessarily turn on the eventual recovery from Pacelli and the putative class members. Pacelli brought her lawsuit "individually and as a class action . . . on behalf" of two classes, a "Nationwide Class" and a "Virginia Subclass." (First Am. Compl. ¶ 59.) The "Nationwide Class" is defined as "[a]ll persons or entities who purchased a *Freejump* Airbag" while the "Virginia Subclass" is defined as "[a]ll persons or entities who purchased a *Freejump* Airbag in the Commonwealth of Virginia. (*Id.* (emphasis added).) Helite, for its part, does not sell "Freejump Airbags" in Virginia or elsewhere. Nor does it advertise FreeJump or FreeJump-branded products. Neither does its distributor Hansen, who sells only *Helite*-branded equestrian products to a retailer in Warrenton. Accordingly, FreeJump has not shown that its claims—both of which relate to injuries caused by *FreeJump*-branded vests—arise out of or relate to Helite's conduct directed towards the Commonwealth. The dispute involves a *Freejump*-branded vest, not a *Helite*-branded vest.

Without any specific facts tying Helite's in-state conduct to the litigation resulting from Pacelli's accident during which she was wearing a *Freejump*-branded vest, the court finds that FreeJump's claims do not arise out of or relate to Helite's Virginia-directed conduct.[2]

---

[2] Because the court finds that it has no basis to exercise specific jurisdiction over Helite after analyzing whether the plaintiff's claims arise out of activities in the forum, the court need not consider whether the exercise of jurisdiction would be constitutionally reasonable.

## IV.  Conclusion

The court finds it cannot exercise specific jurisdiction over Helite because FreeJump's claims do not arise out of and are not related to Helite's contacts with Virginia, the second factor the Fourth Circuit instructs the court to assess.[3]  *Bristol-Myers Squibb*, 582 U.S. at 262; *ALS Scan*, 293 F.3d at 712.  Accordingly, FreeJump has not made a *prima facie* showing of jurisdiction.

For the foregoing reasons, the court will **GRANT** Helite's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) (Dkt. 51).  The complaint will be dismissed without prejudice.

An appropriate Order (Dkt. 71) accompanies this Memorandum Opinion.

**ENTERED** this 2nd day of July, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

---

[3] The court will not permit jurisdictional discovery.  FreeJump's request for "discovery related to Helite's knowledge and intentions related to the design, manufacture, and sale, of the subject model vest," (Pl.'s Opp'n at 13), would not provide any evidence that Pacelli's claims arise out of Helite's activity in the forum.  Helite only provides *Helite*-branded products for its distributor to sell.  (Decl. of Gérard Thevenot ¶ 17.)  Helite never distributed or sold the Freejump branded vests in Virginia  (Decl. of Gérard Thevenot ¶ 18.)